Good morning. The first case this morning is Malich v. Steele, and it's Mr. Liggins and Mr. Quinn. And Mr. Liggins, would you please begin when you're ready? May it please the court, counsel. This case began as a trespass case filed by the plaintiffs Dennis Malich and Matthew Malich against my client, Delores Steele. Both Ms. Steele filed a counter-complaint and affirmative defense, raising issues of adverse possession, boundary line by acquiescence, prescriptive easement, and her own trespass claims. The material facts during the relevant period are undisputed. The essential facts are that in 1975, my client constructed a rock road at the location of an existing dirt lane that the prior owner had told her was on her property. In 1975, Ms. Steele also constructed a barn, a fence with a gate, so that she could use the northern part of her property for pasture. The rock road lay on the east side of her property, and it ran from the south part of her property, from the top of the hill, near the public highway, north, to and through the gate, and then to her barn. Ms. Steele used and possessed this road, the fence, the gate, the barn, the acreage inside the fence, without any objection from any person, from 1975 until the Malich's acquired their property and had their property surveyed in the year 2005. The Malich's owned the property immediately east of my client. Dennis Malich owns a property that immediately abuts the road on the east. Matthew Malich owns a property that is north of the road, and he uses the road for his driveway. The survey, which the Malich's obtained in 2005, showed the survey line to go down the middle of the road. The survey also showed the survey line to be inside the fence that Ms. Steele had built in 1975. Based solely on the survey, the Malich's claimed that Ms. Steele had no right to use the road, and they claimed ownership of the fence, the gate, and all of the acreage inside the fence between the survey line and the fence. Ms. Steele claimed ownership of these same items by reason of adverse possession or by reason of boundary line by acquiescence. She also claimed that even if she were not the owner of the road, that she nonetheless had a prescriptive right to use the road. The trial court examined various exhibits and heard the testimony of my client Ms. Steele, of Dennis Malich, and of Gary Dial, who was a prior owner of the Matthew Malich property. The court, after hearing the evidence, ruled that Dolores Steele was in fact the owner of the fence, the gate, and all the real estate inside the fence by adverse possession. But, the trial court ruled that Ms. Steele could not use any part of the road that lay east of the survey line, which, as I noted, cuts this road in half. Since the road is only about the width of one vehicle, as a practical matter, the decision of the trial court means that Ms. Steele cannot use this road for access to the gate or for her northern acreage. The trial court rejected Ms. Steele's adverse possession claim to the road, but did not directly rule on her boundary line by acquiescence claim, nor did the court directly rule on the prescriptive easement claim. As I noted, the problem my client has with this result is that she was granted ownership of the gate, the fence, the barn, but denied use of the road to get to and through the gate to the barn. This result is difficult to rationalize because the road, the fence, the gate were all constructed in 1975. They were all possessed and claimed by Ms. Steele for 30 years from 1975 without challenge from anyone until the mailings obtained in the survey in the year 2005. Obviously, the ruling that the trial court made that Delores Steele owned the fence and the gate and the barn and all real estate inside the fence is not part of this appeal. The only property issues in this appeal relate to the road. Now, there are some other issues on appeal that relate to damages for trespass, but quite frankly, those are secondary issues to my client. The decision of the trial court that Ms. Steele had no right to use the road arises because the trial court made various errors on matters of law. First, it needs to be noted that even if Delores Steele did not establish ownership of the east half of the road, the record clearly shows that she had a right to use the road by reason of a prescriptive easement. She built the road in 1975 in the same location as a third lane that her predecessor in title had been using. She controlled use of the road after she built it, both granting permission and denying permission to others to use the road. She used the road continuously from 1975 until it was changed and blocked by the mailings in the year 2009. Now, the trial court, as I noted, did not rule on this claim. But the failure of the trial court to rule on the issue of prescriptive easement when these facts are in the record, these uncontested facts are in the record, is a critical omission and we believe to be an error by the trial court. As I noted, the trial court essentially decided this case on the issue of adverse possession and ruled that Ms. Steele did not have ownership of the road by adverse possession. And the road essentially runs from the gate post south toward the highway to the top of the hill. Now, the trial court's ruling that Delores Steele's adverse possession claim does not stand the test of law is erroneous for many reasons. First, it should be noted that the factual findings within the court's own judgment found that Delores Steele began using the road in 1971, that she improved that dirt lane in 1975, that she used it thereafter for a period of more than 30 years, entered the gate and accessed the barn and pasture which was inside the fenced-in acreage. Prior to 1992, she had given actual, verbal, or written permission to every owner of the Matthew Mailey property that used the property for driveway purposes and during this period of time, no adjoining property owner, which would have been the predecessors to Dennis Mailey, ever challenged her claim or use of the road. So, the period from 1971 to 1992 is obviously a period in excess of 20 years. This 20-year period, even in the absence of any other evidence within the record, establishes that Delores Steele was owner of the property by adverse possession. And incidentally, this same 20-year period also meets the requirement of law with regard to boundary line by acquiescence. Since all the adjoining property owners accepted the fact that the road belonged to Miss Steele and accepted the fact that the east edge of the road was part of the boundary line. Now, the trial court did not make any ruling on the period 1971 to 1992. Instead, the trial court ruled that adverse possession was not established because of events which occurred after 1992. Now, we believe that to be contrary to law because any 20-year period of adverse possession, adverse use, can't meet the requirements of adverse possession. And once ownership is established by adverse possession, that ownership continues until an adverse claim is made by some other party that meets the requirements of adverse possession. That argument was not made in this case, and there's no fact which would support such an argument. But even if the events which occurred after 1992 are needed to establish adverse possession in Miss Steele, the court's ruling as to these post-1992 events are also erroneous as a matter of law. The court found that Miss Steele in 1990 gave written permission to Gary Dial and to his successors, and that's an important point, to use the road for driving purposes. But the trial court ruled that because Dolores Steele did not actually communicate this permission to each successor user of the road, that all use of the road after 1992 by these successors was not permissive, and that since it was not permissive, her adverse possession was interrupted. This ruling is contrary to law because once a permissive use is granted, a permissive use continues until the user asserts an adverse claim to the party that gave the permission. No adverse claim was made in this case until the Mounts obtained their survey, until they acquired their properties in 2004-2005, and obtained their survey in 2005. Also, the trial court ruled that Miss Steele's adverse possession claim was defeated because she did not record the written permission that she had given in 1990, and because there were recorded conveyances of the Mallet tracts after 1992. The trial court ruling on these reporting issues are contrary to law because adverse possession is established by possession and by use, not by recorded documents. The trial court also made another legal error in that it applied a legal presumption in favor of the people, the successors of Gary Dial, who was using the driveway, but who did not own the underlying real estate. These are the parties that we assert were using the property pursuant to the permission of Miss Steele. Now, we acknowledge that there is a presumption in favor of the record owner of the underlying real estate when a party makes an adverse possession claim, but that presumption does not apply in this case. And this presumption was simple to report through. The road in question, if you look at the survey, is upon property owned by Delores Steele and upon property owned by Dennis Mallet. The road was and is still used, for driveway purposes, by persons who owned the property to the north of the road, which would have been Gary Dial and his successors and interests, a gentleman by the name of John Malloway and others, as well as Matthew Malick. Nonetheless, obviously neither Matthew Malick nor his predecessors owned any part of the real estate underlying the road. And that matter is clear from the deeds and the matters within the record. Nonetheless, the trial court said there was a legal presumption in favor of these users of the road that they were using the road as record owner and not by reason of any permission. The trial court was in error factually because they were not the underlying record owners of the road and because the presumption applies only to record owners and would not apply to someone who was not a record owner. Now the court used this presumption to negate Miss Steele's unrefuted evidence that use of the road by others as part of their driveway was pursuant to her permission. Ruling instead that each of these post-1992 driveway users were presumed to be using the road as an owner in their own right. Finally, the court's selection of a June 11, 1992 date as a date that Miss Steele's adverse possessions and use of the road ceases contrary to law and also contrary to the facts. After 1992, the road still ran to Miss Steele's gate. The road still ran through Miss Steele's gate and it provided obvious access to Miss Steele's fenced-in northern acreage. Miss Steele also continued to use the road weekly after the 1992 date. The physical appearance of the road, the path of travel of the road to the gate and through the gate, inside the fence to the barn, her open use of the road, none of this changed. It was all still there after 1992 just as it was before 1992 and it was visible for all the world to see. Miss Steele's use of the road after 1992 continued to the same extent as it had occurred prior to 1992. In addition, the use of the driveway, of the road for driveway purposes by the subsequent owners of Gary Dial continued after 1992 in the same manner consistent with the written permission that Miss Steele had given to Gary Dial and to his successors and it continued in the same manner after 1992 as it did before 1992. And it continued that way until 2009 when the Maleks put a chain across the road and blocked use of the road. In conclusion, Delores Steele built a barn, a fence, a gate and for a period of 30 years after building each of these items, she used the gate, the fence, the barn as her very own property with no objection from anyone. Even Dennis Malek owned this property for more than a year before he made any objection as to Miss Steele's use of the road or as to Miss Steele's ownership of the road. And that objection was only made after he obtained a survey in 2005. It wasn't based upon anything he saw on the land. It was based solely upon the survey that he obtained in 2005 long after the property rights of Miss Steele had been established by either adverse possession or by boundary line by acquiescence. Now, as a result of the trial court's decision, Miss Steele has ownership of her acreage to the north. She has ownership of the fence. She has ownership of the gate. But she can't use the road that goes to and through the gate. Miss Steele respectfully requests this court to reverse the trial court's findings and ruling that Miss Steele is not the owner of the road and find that she is the owner of the road But if this court finds that she is not the owner of the road, we respectfully ask that you nonetheless find that she has a prescriptive right to use the road. Thank you. Thank you. Mr. Quinn. Thank you. Good morning. May it please the board. Counsel. Judge Joe Harrison wrote his judgment out on February 1, 2011. And I think he spelled out his reasons for his decision pretty clearly. And as far as this issue of her possession and whatever form it took in that period from 1992 to what would have completed the 20-year cycle for the meeting of these requirements, Judge Harrison wrote, There's no evidence that since June 1992, either Clarence or Georgia or Eliasson or any other subsequent owner of the Matthew Malick Fax ever gave any indication that they were using the driveway other than as owners of the driveway. And then Judge Harrison goes on, That's a factual observation that he made of the cases it was presented to us. She didn't present the evidence. It was her burden to present. When a person claims ownership of real estate under the doctrine, this is the quote continuing, doctrine of adverse possession or under the doctrine of boundary of acquiescence, the person has a burden of proof by clearing convincing evidence. So Judge Harrison was fully aware of what the standard was, what she had to prove, and who it was that had to prove it. The Malicks didn't have to prove anything. It was her that had to prove that she had acquired this land by one of these different formats, boundary by acquiescence, adverse possession, or by prescription. And Judge Harrison says she didn't prove it with regard to this particular landowner, Eliasson. And then he goes on to say, She failed to show that since June 2011, any of the owners of the Matthew Malick tract in any way acknowledged her to be the owner of that portion of the roadway. And so I think Judge Harrison pretty clearly spells out why he ruled the way he did on this issue of the boundary by acquiescence or even by prescription. I think that one of the things that I really emphasize in my brief is that Judge Harrison was the person that sat through that mind-numbing trial on October 26, 2010, where we heard all this evidence about this tract and that tract. It was not an easy case to follow, especially if you didn't have the survey, the diagrams, and all the exhibits. Like I said, it was mind-numbing. He sat through it and watched all of the testimony, observed all of the exhibits, and determined what did he find credible and what didn't he find credible. And I like Gary Geil, but his story was completely outrageous. That, yeah, we knew that we had the property, the road belonged to her, but we went ahead and took the time and expense to get these perpetual mutual easements so I could get up to my house, so I'd have a driveway up to my house, because he was in the Matthew Malick tract. His brother was in the tract owned currently by Dennis. And so Dennis, the person in the Dennis Malick tract, his brother could get up to his northernmost acre, which, you know, if he was in New England, I don't know if any of you were in New England, but kind of a running joke on Asking for Directions is, you can't get there from here. Well, you can't get to his northernmost acre without some sort of way to do it. And the way they determined to do that was to do this perpetual mutual easement, allowing the person on the southernmost acres to get to their northernmost acre and allowing the person in the middle five acres to get to his house from the road. Otherwise, he's, you know, not got any connections to any roads whatsoever. And so it was a, once they, once that ten acres was split into two owners, they needed the perpetual mutual easement. They needed some sort of thing to, some sort of mechanism to where they could each access the points of the property they need to access. And so they reported this easement. They made improvements to the driveway. You know, the owners of the Malick tracts were the ones who made these improvements to the driveway. They acted as if they were owners. Well, then, you know, a decade or two later, whenever they're not living there anymore, Gary Dial, you know, nice guy, tries to help out his old friend Dolores by saying, oh, well, we knew that that wasn't our driveway and that she was just letting us use it. But that didn't really follow common sense. And I kind of spell out, you know, the particular irregularities with his testimony, you know, in my brief, but it just, it didn't make any sense that they were, they spent the time and money and effort to get a mutual easement over a pond when there was a driveway right there that they were able to use. It just didn't make any sense. And so, I mean, unless they're wanting to try to go, you know, interstate 64 and a half or 57 and a half or something, they have two driveways running right next to each other, which they clearly weren't. They had a driveway that they were using. And then once they moved and didn't have any ties to the property whatsoever, remembered things a little bit differently than reality, you know, when they came time to testify in court. But, and so I think that, you know, Mr. Leggings makes a lot of weight in the fact that the evidence was, certain pieces of evidence were uncontroverted. But, I mean, I think that reading Judge Harrison's February 2011 judgment makes pretty clear, he makes clear what pieces of evidence he found credible. And then there's certain pieces of evidence that he just doesn't mention or doesn't really give a whole lot of weight to. And I think Judge Harrison spells out pretty clearly what his findings were, what pieces of evidence he took into consideration when reaching this judgment, this 12 or 13 page judgment. And, I mean, I just think that Judge Harrison got it right. And, you know, the burden is high to show that, you know, he as the finder of fact, you know, didn't perceive the evidence correctly. And, you know, I just frankly think that the court's in a position here that nothing goes against any manifest way to the evidence or anything here. And so I think Judge Harrison's decision needs to be affirmed. In interpreting Judge Harrison's order, can you find where he rules on the prescriptive easement claim? I think that he's talking about that. I referenced here this page 6, and he doesn't specifically mention the word prescriptive easement, but I think that that makes a lot of sense. I've read this order a few times. And I think that those sentences in the middle of page 6 that I was reading out of, I think that he is including that. Can you tell me what those sentences are? Oh, yeah. When a person claims ownership of real estate under the doctrine of adverse possession or under the doctrine of the boundary of acquiescence, that person has the burden of proof by clear and convincing evidence. And that's essentially, you know, the burden that exists for the prescription as well. And, you know, that's about six lines down is where that begins, and then continues for about five lines. And then he says, she's failed the show. You know, anyway, they acknowledge that. So, and then he talks specifically about the prescription mutual ease, but then on page 7, and, oh, I'm sorry. I'm sorry, I spoke there. On page 3 it is that he, no, I'm going back to 2. He titles these boundary line by possession or boundary line by acquiescence. He doesn't really have a separate heading for the easement by prescription. And so I think that, based on my reading of that, I think he was considering those arguments one and the same. But he lines out every other one of the various issues that were forced from the mutual easement to the driveway easement to the track that he did with Dolores to the trespass, you know, and the injunction scene. He has a well-organized decision here, judgment here. And I think that the way I read it is he was reading, you know, considering those as similar enough where he could address them both at the same time. And so I don't think that that changes the effectiveness of the judgment that he made with the three plus three words there. Okay, thank you. Rebuttal? Do you agree that the elements of a prescriptive easement are essentially the same as an adverse possession claim? I do, except that the use issue may be a little less because obviously on a prescriptive right or easement, multiple people can be asserting prescriptive easement rights at the same time because they're against the owner of the underlying property. Whereas in this case, quite frankly, if the use by the driveway of the other owners had not been by our permission, that would have interrupted adverse possession because other people would have been using the road. Was there any attempt to bring to the trial judge's attention that he did not rule on a prescriptive easement while it was still in his hands and he still had jurisdiction? There was a motion to reconsider the file that addressed essentially all of the issues I've raised today and the court ruled on the... You pointed out to him he hadn't ruled on it? Yes. He still ignored it or didn't address that? Yes. At that point, that's when the court restated its belief that these people had a presumptive right to use the road and that would defeat our adverse possession claim. And that's the only issue he addressed. He didn't address the prescriptive easement. Wouldn't that finding defeat the prescriptive easement claim if it's not against the manifest way to the evidence? Which one? If it is not against the manifest way to the evidence, defeat the prescriptive easement claim. No, I would not because, as I indicated, in fact, if there were 4 houses using this property as a driveway with none of them having permission of the underlying owner, every one of those 4 would have a prescriptive easement to use the road for their driveway. So I don't believe the rights of one depends on the rights of others. As I indicated, you can have multiple people claiming a prescriptive easement on an attractive ground and, in fact, it happens quite often. No, you go ahead. I apologize. Just briefly, with regard to the easement, Gary Dial testified that he and his brother who created the easement recognized where the boundary line was between his property and Delores Steel's property and they created a boundary line with the intent and purpose of it being so many feet on their side of the boundary line. Now, they did like everybody does. Most people do. They use a legal description in their deed and say 20 feet on the west side of my property. But he clearly testified the intent was as to the location of the easement was on their property and he clearly testified as to where he understood the boundary line to be. The intent of the parties creating an easement is a primary determiner of where that easement should be. So his testimony should be reviewed or considered controlling that issue. Also, if you note, his use of the property after these easements were created is consistent with where he said the easement was because he thought this driveway that he put in on Delores' road was on her property, not on his easement. He asked her permission twice to use her road for his driveway. If he was asserting any claims under this easement or asserting any rights under this easement, he didn't need her permission. He had an easement right to use the road or, well, the property. He's to the survey for his own purposes. With regard to the issue the counselor addressed regarding these people didn't acknowledge the permissive use, the law doesn't say they've got to acknowledge the permissive use. The law says they have to rebut the permissive use. The permissive use continues until it's rebutted. Ms. Steele didn't have any inkling that anyone made any claim to her road, the road that ran to her gate and to her barn. They have to make a claim. They had notice of her use of the road and of her claim to the road because she used the road, because the road was on the east side of her property and ran straight through the gate to the barn. And let me say, we are not asking this Court to substitute this judgment for the trial court in this matter. We're asking this Court to substitute this judgment as to what the law is and to substitute this judgment as to the application of the laws of the facts within the record in this case. Because the facts, quite frankly, are undisputed. No one testified as to any matter between 1971 and 2005 that was in conflict. And we believe that a judgment is against the manifest weight of the evidence if you have an unreasonable result. How unreasonable is it that the trial court gave her the fence, the gate, and the acreage inside the fence, all of which was established in 1975, but denied her use of the road that she'd been using for 30 years, which was also built in 1975. And that's what the result of this judgment is. The judge gave her the gate, but he denied her the use of the road to use the gate. The gate has no purpose whatsoever if she cannot use the road. And thanks to both of you. We'll provide you with an order at the earliest possible date.